USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE MAURY RUBIN,

Debtor.

25-CV-07979 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Fonz, Inc. ("Fonz" or "Appellant") appeals from the September 5, 2025 Decision and Order of the United States Bankruptcy Court for the Southern District of New York (the "Order"), dismissing its adversary proceeding against Maury Rubin ("Appellee"), debtor in the underlying bankruptcy proceedings, and declaring that Rubin's debt owed to Fonz is not excepted from discharge under sections 523(a)(2)(A) or (B) of the Bankruptcy Code. For the reasons set forth below, the Order is AFFIRMED.

## BACKGROUND

### I. RELEVANT FACTS[1]

Rubin was the founder, manager, and operator of City Bakery Brands, which included a subsidiary, The City Bakery, and other affiliated entities operating in several locations across New York City (together, the "Rubin Businesses"). App'x I at 18. City Bakery Brands was initially successful, leading Rubin to consider expanding internationally. *Id.* at 172. In April 2013, Rubin granted Fonz, a joint stock corporation organized under the laws of Japan, an exclusive non-assignable ten-year license to operate The City Bakery in Tokyo and Osaka. *Id.* at 170, 172–73, 225. Fonz subsequently opened several City Bakery locations in Japan, and in

[1] The following facts are drawn from Appellant's Appendix, Volume I, Dkt. No. 10-1 ("App'x I"), Volume II.1, Dkt. No. 10-2 ("App'x II-1"), and Volume II.4, Dkt. No. 10-5 ("App'x II-4"). Citations to Appellant's Appendix incorporate by reference the documents cited therein and utilize ECF pagination.

March 2015, the license agreement was amended to extend its term indefinitely and to encompass all of Japan. *Id.* at 173–74, 256. Under the license agreement, Rubin received royalties but retained control over the use of The City Bakery trademark and intellectual property rights, as well as the rights to his own name, image, and likeness. *Id.*

The City Bakery was successful in Japan, with Fonz expanding to approximately 38 locations across the country. *Id.* at 411. Meanwhile, Rubin began experiencing financial difficulties with The City Bakery in New York. Due largely to construction issues arising from an expansion of the Rubin Businesses, The City Bakery became financially unstable, leading Rubin to seek cash from various third parties after being unable to obtain conventional bank financing. *Id.* at 591–92, 603–04. In December 2013, Anthony Melfi and Christopher Parzych both issued separate loans, each in the amount of $250,000, to City Bakery Brands (the "Melfi Note" and "Parzych Note," respectively). *Id.* at 18. While Rubin remained obligated to Melfi and Parzych separately, the Melfi and Parzych Notes were consistently referred to together, as the "Melfi Loan." *Id.* at 608. Moreover, Rubin dealt exclusively with Melfi and only made payments to him in connection with the aggregated debt. *Id.*

Rubin also sought and obtained additional financing through "friends and family" loans, merchant cash advances, and small business loans. *Id.* at 52, 609, 613–14. But those efforts were not enough to relieve The City Bakery's financial difficulties. *See id.* at 613. By 2018, The City Bakery was facing a financial crisis, and Rubin reached out to Fonz regarding potential financing. *Id.* at 19. At the same time, Fonz had expressed interest in investing in The City Bakery's New York operations, leading to discussions over a financing arrangement and potential acquisition by Fonz of the Rubin Businesses. *Id.* at 19, 528, 614. Fonz ultimately

extended three secured, short-term loans to The City Bakery and City Bakery Brands in 2018.[2] *Id.* at 19. The financing required Rubin to repay certain debts but foreclosed him from using the proceeds to pay himself, any of his investors, or any "friends and family" obligations. *Id.* at 19, 144.

Over the course of the following year, Fonz provided additional financing to the Rubin Businesses while performing due diligence on The City Bakery's financials. *Id.* at 101–02, 262. Rubin directed his consultants to provide Fonz with anything it requested, and Fonz's retained professionals were granted access to the Rubin Businesses' books and records. *Id.* at 403, 405–06. However, in an August 2018 email, Rubin instructed Kristin Edwards Niarchos, an employee of Rubin charged with various tasks relating to The City Bakery's financial records, not to provide Fonz access to certain Melfi Loan documents, and Fonz ultimately never received those documents. *Id.* at 40 n.15; App'x II-4 at 33.

In late 2018, The City Bakery and City Bakery Brands defaulted under the Fonz Loans. App'x I at 648. Fonz entered discussions with Rubin to extend the maturity dates on the notes in exchange for certain rights, including intellectual property rights. *Id.* at 541–42. On February 8, 2019, Rubin received a demand letter from counsel for Melfi and Parzych relating to a default on the Melfi Loan (the "Demand Letter"), seeking an amount due and payable of $415,125.32 and threatening litigation for failure to pay. *Id.* at 19–20, 59, 181.

On or about February 27, 2019, Rubin executed a consolidated note (the "2019 Consolidated Note"), along with other relevant documents, to refinance all of the Fonz Loans.[3]

[2] All financing provided by Fonz to the Rubin Businesses prior to the 2019 Consolidated Note is referred to as the "Fonz Loans."

[3] These additional documents included a Note Exchange Agreement, a Security Agreement, a Guaranty, an Intellectual Property Acquisition Agreement, and an Amendment to the License Agreement. App'x I at 19–20.

*Id.* at 19–20. Under this transaction, no new funds were advanced by Fonz, and the outstanding Fonz Loans were either extinguished or consolidated into the new agreement. *See* App'x II-1 at 9. The principal amount of the 2019 Consolidated Note was $1,167,175, accruing interest at 15% and with a maturity date of June 13, 2019. *Id.* at 9–10. Rubin personally guaranteed the note. *Id.* at 24. In addition, the Japanese registration for The City Bakery trademark was transferred to an affiliate of Fonz, the license agreement was expanded to give Fonz greater control over the Japanese locations, and Fonz obtained a secured interest in collateral of the Rubin Businesses. Dkt. No. 10-8 at 42, 49, 56.

The 2019 Consolidated Note contained two provisions that would eventually serve as the bases for Fonz's nondischargeability claims against Rubin. First, Section 7.5 of the Note, titled "No Litigation," states:

> No action, suit, litigation, investigation or proceeding of, or before, any arbitrator or Governmental Authority is pending or threatened by or against any Borrower Party or any of the property or assets of any Borrower Party (a) with respect to any Loan Documents or any of the transactions contemplated hereby or thereby or (b) that would be expected to have a Material Adverse Effect.

App'x II-1 at 13. Second, Section 7.6, titled "Existing Debt," states in relevant part:

> Exhibit B (the "Schedule of Debt") sets forth a list of all Debt of the Borrower and the Subsidiary Guarantors that is true and correct in all material respects as of the date of this Note.

*Id.* (emphasis omitted). When Rubin executed the 2019 Consolidated Note, the existence of the Demand Letter was not disclosed to Fonz. App'x I at 21. In addition, the accompanying "Schedule of Debt" disclosed only the Melfi Note with a principal amount of $250,000 and a current balance of $270,000, understating the aggregate debt under the Melfi and Parzych Notes by roughly $150,000. App'x II-1 at 23.

In April 2019, Melfi and Parzych filed suit against City Bakery Brands and Rubin, seeking the unpaid principal and interest under the Melfi and Parzych Notes. App'x I at 20.

Rubin was aware of the action but did not respond, and a default judgment was entered in favor of Melfi and Parzych. *Id.* at 749–50. When the 2019 Consolidated Note became due on June 13, 2019, The City Bakery and City Bakery Brands defaulted. *Id.* at 648. Rubin continued to operate the City Bakery Brands until October 2019, and filed for bankruptcy in December 2019. *Id.* at 20, 62.

## II. PROCEDURAL HISTORY

Rubin filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 20, 2019. Thereafter, Fonz commenced an adversary proceeding against Rubin, asking the Bankruptcy Court to deem the 2019 Consolidated Note nondischargeable under sections 523(a)(2)(A) and 523(a)(2)(B) of the Bankruptcy Code. *Id.* at 3, 8–9. On June 16, 2020, the Bankruptcy Court granted Rubin a discharge pursuant to § 727(b) of the Bankruptcy Code. *Id.* at 18, 36.

Following a two-day trial, the Bankruptcy Court issued a 59-page Decision and Order on September 5, 2025, holding that Rubin's debt was dischargeable and dismissing Fonz's claims in the adversary proceeding. *Fonz v. Rubin (In re Rubin)*, No. 20-AP-01062 (JLG), 2025 WL 2586469, at *2 (Bankr. S.D.N.Y. Sept. 5, 2025). The Bankruptcy Court held that "Rubin's failure to disclose the Melfi/Parzych Demand Letter is an omission respecting Rubin's financial condition," and therefore, as a matter of law, not excepted from discharge under § 523(a)(2)(A). *Id.* The Bankruptcy Court then found that Fonz had failed to establish the necessary elements—materiality, reliance, and intent to deceive—required to declare a debt nondischargeable under § 523(a)(2)(B). *Id.* Accordingly, the Bankruptcy Court concluded that Rubin's debt was dischargeable and discharged his debt under § 727(b) of the Bankruptcy Code. *Id.* Fonz timely filed its notice of appeal on September 25, 2025. Dkt. No. 1.

## DISCUSSION[4]

### I. STANDARD OF REVIEW

28 U.S.C. § 158(a)(1) vests district courts with appellate jurisdiction to review "final judgments, orders, and decrees" of the bankruptcy courts. The Court reviews factual findings for clear error and legal conclusions *de novo*. *In re Charter Commc'ns Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012).[5] A factual finding is "clearly erroneous" when "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *In re Arfa*, No. 14-CV-07895 (AJN), 2015 WL 5610864, at *2 (S.D.N.Y. Sept. 23, 2015).

### II. THE DISCHARGE ORDER IS AFFIRMED

Fonz raises five issues on appeal[6]: (1) whether the Bankruptcy Court erred in applying a "heightened evidentiary standard"; (2) whether the Bankruptcy Court erred in holding that nondisclosure of threatened litigation does not fall under § 523(a)(2)(A); (3) whether the Bankruptcy Court erred in using a "quantitative standard" regarding the materiality element of § 523(a)(2)(B); (4) whether the Bankruptcy Court erred in finding that Fonz did not actually rely on Rubin's allegedly fraudulent actions; and (5) whether the Bankruptcy Court erred in finding that Rubin did not act with intent to deceive. Appellant's Br. at 2–4.

---

[4] The Court refers to the filings in the following manner: Fonz's appellant brief, Dkt. No. 9, as "Appellant's Br."; Rubin's appellee brief, Dkt. No. 18, as "Appellee's Br."; and Fonz's reply brief, Dkt. No. 21, as "Reply Br."

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

[6] While five issues are listed in Appellant's brief, Appellant initially set forth nine issues in its Statement of Issues and Designation of the Record on Appeal. *See* Dkt. No. 3 at 2. The Court has considered all issues raised by Appellant but finds it necessary to address only two of the issues in resolving this appeal.

Because a successful claim for nondischargeability under both sections 523(a)(2)(A) and 523(a)(2)(B) requires a finding that the debtor acted with intent to deceive,[7] the fifth issue—whether the Bankruptcy Court erred in finding that Rubin did not act with intent to deceive—is dispositive of this appeal. Accordingly, only two questions are relevant: first, whether the Bankruptcy Court clearly erred in finding no intent to deceive, and second, whether, in making that finding, the Bankruptcy Court applied the proper evidentiary standard. The Court will address these questions in reverse order.

**A. The Bankruptcy Court Applied the Correct Evidentiary Standard**

Whether the Bankruptcy Court applied the correct evidentiary standard is a legal conclusion subject to *de novo* review. *Charter Commc'ns*, 691 F.3d at 482–83. The Bankruptcy Court articulated the applicable standard as follows: "In an exception to discharge action, the creditor-plaintiff bears the burden of proof on all elements of the claim by a preponderance of the evidence," *In re Rubin*, 2025 WL 2586469, at *15 (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)), and evidence should be construed "strictly against the creditor and liberally in favor of the debtor," *id.* (quoting *In re Gumbs*, 663 B.R. 227, 236 (Bankr. S.D.N.Y. 2024)). The Bankruptcy Court then proceeded to apply that standard. *See, e.g.*, *id.* at *26 ("The Court, therefore, finds that Rubin's isolated instruction, when viewed alongside the broader due

[7] Intent to deceive is an express statutory element of Section 523(a)(2)(B) (a "statement in writing . . . (iv) that the debtor caused to be made or published with intent to deceive"). *See also, e.g.*, *In re Boice*, 149 B.R. 40, 44–45 (Bankr. S.D.N.Y. 1992). While not stated explicitly in the statute, courts have consistently held that Section 523(a)(2)(A) also requires that a creditor show the debtor acted with intent to deceive. *See Field v. Mans*, 516 U.S. 59, 68 (1995) (reviewing the history of § 523(a)(2)(A) and § 523(a)(2)(B) and finding that subsection (A) imports the traditional tort requirements of intent, reliance, and materiality); *In re Fenti*, No. 94-5025, 1994 WL 16167976, at *2 (2d Cir. 1994) (to prove a debt is non-dischargeable under § 523(a)(2)(A), the creditor must show, among other things, that the misrepresentation was made "with intent to deceive"); *Giminiani v. Cesar*, 536 F. App'x 85, 88 (2d Cir. 2013) (intent to deceive is required to find a debt nondischargeable under § 523(a)(2)(A)); *In re Arfa*, 2015 WL 5610864, at *2 (intent to deceive is a required element under § 523(a)(2)(A)).

diligence access Fonz was given and the credible explanation concerning the document's accuracy, reflects an issue of documentation management rather than a deceptive intent required to support a finding of fraud."); *id.* at *27 ("Fonz has failed to meet its burden of demonstrating intent to deceive under section 523(a)(2)(B)(iv).").

Fonz's argument on appeal is hardly a model of clarity. To the extent Fonz contends that the standard of proof for an exception to dischargeability under § 727 is different from that for an exception to dischargeability under § 523, *see* Appellant's Br. at 16, that is wrong. Whereas "§ 523 simply bars discharge of specific debts incurred through fraud, § 727 is a blanket prohibition of a debtor's discharge." *In re Chalasani*, 92 F.3d 1300, 1309 (2d Cir. 1996). Fonz does not cite a single case or offer any legal principle supporting the distinction it appears to press. To the contrary, numerous courts in this Circuit have held that the evidentiary standard governing § 727 and § 523 are one and the same: "Exceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *In re Snyder*, 939 F.3d 92, 101 (2d Cir. 2019) (quoting *In re Hyman*, 502 F.3d 61, 66 (2d Cir. 2007)); *see also In re Spar*, 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994); *In re Iulo*, 421 B.R. 49, 54 (Bankr. S.D.N.Y. 2009); *In re Crowson*, 395 B.R. 224, 227 (Bankr. N.D.N.Y. 2008).

Accordingly, the Bankruptcy Court stated and applied the correct evidentiary standard.

### B. The Bankruptcy Court Did Not Err in Holding That Fonz Failed to Meet Its Burden of Demonstrating Intent to Deceive

Next, Fonz contends that the Bankruptcy Court erred in "crediting Rubin's testimony and attributing errors to disorganized record-keeping and operational stress" to find no intent to deceive on Rubin's part. Appellant's Br. at 29. Rubin, on the other hand, argues that the Bankruptcy Court did not clearly err in its findings of fact regarding intent to deceive, and thus, this Court is bound by those findings. Appellee's Br. at 18. Examining the Bankruptcy Court's

findings on intent to deceive for clear error, the Court finds none. *See In re Steinberg*, No. 16-CV-04074 (LGS), 2017 WL 1184314, at *4 (S.D.N.Y. Mar. 29, 2017).

As discussed above, *supra* n.7, to establish nondischargeability under either Section 523(a)(2)(A) or Section 523(a)(2)(B), a plaintiff must prove, *inter alia*, that the debtor acted with intent to deceive the creditor. "[W]hether to infer the requisite intent is left to the bankruptcy court that presides over the case." *Steinberg*, 2017 WL 1184314, at *4 (quoting *In re Furio*, 77 F.3d 622, 625 (2d Cir. 1996)); *see also McCann v. Coughlin*, 698 F.2d 112, 124 (2d Cir. 1983) (noting reluctance to find a district court finding "clearly erroneous where that finding concerns motive or intent"). Fonz argues that the withholding of relevant agreements with Melfi and Parzych— specifically, Rubin's directive to Niarchos to not provide certain Melfi Loan documents to Fonz—evinces Rubin's intent to deceive. Appellant's Br. at 29–30. The Court is not persuaded.

In the proceedings below, the Bankruptcy Court, having observed the witnesses at the trial and considered all the relevant documents, credited Rubin's explanation for his directive to Niarchos, that "at the time of the request, [Rubin] believed the figures related to the Melfi and Parzych Notes were inaccurate because they did not account for a $100,000 payment he had made from his personal bank account." *In re Rubin*, 2025 WL 2586469, at *26. The Bankruptcy Court found this explanation corroborated by testimony from Niarchos herself who stated that "her understanding was that Rubin wished to provide signed versions of the documents rather than an unsigned one and asked her to 'hold on' sending the unsigned one." *Id.* Though the signed versions were never provided to Fonz, the Bankruptcy Court further credited Rubin's explanation for that failure, namely his "state of extreme operational distress during [the

relevant] period, . . . working 12 to 14-hour days, sleeping only two to three hours a night, . . . entirely consumed with 'trying to save the business.'" *Id.*

Fonz points to nothing in the record that undercuts these findings or suggests that the Bankruptcy Court abused its discretion in crediting Rubin's and Niarchos' testimony. At bottom, Fonz's arguments amount to a criticism of the Bankruptcy Court's assessment of witness credibility. *See* Appellant's Br. at 29 ("The Court erred in crediting Rubin's 'disorganized books' and 'operational stress' explanation and finding no intent or reckless disregard."). But in reviewing a decision of the bankruptcy court, it is not the district court's role to weigh the evidence as it sees fit or second-guess judgments that ought to be given deference. *See Matter of D.H. Overmyer Co., Inc. (Texas)*, 30 B.R. 823, 827 (S.D.N.Y. 1983) ("This Court may not and will not substitute its judgment for that of the court below which had an opportunity to hear the testimony of the witnesses and evaluate their demeanor and credibility."); *see also In re Pisculli*, 426 B.R. 52, 59 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011) ("Particularly strong deference must be given a bankruptcy court's findings of fact based on credibility assessments of witnesses it has heard testify." (quoting *In re Boyer*, 328 F. App'x 711, 716 (2d Cir. 2009))). The Bankruptcy Court did not err in concluding that the withholding of documents related to the Melfi and Parzych Notes did not establish Rubin's intent to deceive.

Fonz's second argument fares no better. Fonz contends that notwithstanding Rubin's awareness of the threatened litigation, the Court improperly "accepted his assertion that he simply failed to follow up and 'did not connect' the demand letter to the representations he was making to Fonz." Reply Br. at 12–13. The Bankruptcy Court found multiple legitimate reasons for Rubin's failure to disclose the Demand Letter:

> First, [Rubin] believed the damage claim was overstated because it did not account for uncredited payments of the Melfi Note and Parzych Note. Second, he

> did not consider the matter pressing amid multiple business challenges, including efforts to sustain operations during financial distress. Finally, Rubin testified, credibly, that he did not connect the letter with the Rep in section 7.6 of the 2019 Consolidated Note that no litigation was threatened.

*In re Rubin*, 2025 WL 2586469, at *24. Fonz does not identify anything in the record that would undermine this finding. And to the extent Fonz argues that the Bankruptcy Court erred by crediting Rubin's testimony, that argument fails because, as discussed above, the Court must defer to the Bankruptcy Court's credibility determination. *See In re Pisculli*, 426 B.R. at 59.

Reviewing the record in its entirety, the Court is far from the "definite and firm conviction" that the Bankruptcy Court committed any mistake or error in its determination that Rubin did not act with intent to deceive Fonz. *See In re Calpine Corp.*, 365 B.R. 401, 407 (S.D.N.Y. 2007). Accordingly, the Bankruptcy Court's finding that Fonz failed to meet its burden on nondischargeability is affirmed.[8]

### C. The Remaining Issues Need Not Be Addressed

The Bankruptcy Court applied the correct evidentiary standard and committed no clear error in finding that Rubin did not act with intent to deceive regarding any of the acts alleged to be fraudulent by Fonz. Because intent to deceive is necessary to support a nondischargeability claim under both sections 523(a)(2)(A) and 523(a)(2)(B), affirming the Bankruptcy Court's

---

[8] On reply, Fonz argues that "[t]he intent analysis under § 523(a)(2)(A) and § 523(a)(2)(B) differs." Reply Br. at 12. According to Fonz, "[w]hile both provisions require proof of intent to deceive, § 523(a)(2)(A) permits intent to be inferred more flexibly from conduct, omissions, or circumstantial evidence surrounding a fraudulent scheme, whereas § 523(a)(2)(B) imposes a narrower and more exacting inquiry focused on whether the debtor made or published a written financial statement knowing it was false or with reckless disregard for its truth." *Id.* But Fonz cites no case let alone any legal principle in support of its purported distinction. *Cf. Capozzolo v. Grow Am. Fund, Inc.*, 626 F. Supp. 3d 612, 618–19 (W.D.N.Y. 2022) (holding that the standard for intent is the same under both sections). And even if this Court were to adopt Fonz's view, the Bankruptcy Court's findings clearly support a lack of intent under Section 523(a)(2)(A), especially in light of binding Second Circuit precedent that "[e]xceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *In re Snyder*, 939 F.3d at 101.

finding on this issue alone is dispositive of this appeal. Accordingly, the Court does not reach the other issues raised by Fonz.

## CONCLUSION

For the reasons set forth above, Fonz's appeal is denied, and the Order is affirmed. The Clerk of Court is respectfully directed to CLOSE this case.

Dated: September 30, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge